UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kimberly Ann Henny, | Case No. 23-cv-448 (DSD/DLM) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden Michael Segal, | |
| Respondent. | |

This matter is before the court on Petitioner Kimberly Henny's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) Ms. Henny claims that the Federal Bureau of Prisons ("BOP"), sued through her then-federal facility's BOP Warden Michael Segal, has failed to properly calculate and apply her earned time credits ("FTCs") under the First Step Act ("FSA"). (*Id.* at 7.) After initial and supplemental briefing, the petition now comes before this Court for review under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court.[1] It has been referred to the undersigned United State Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that Ms. Henny's petition be denied, and this action be dismissed without prejudice.

---

[1] Although Ms. Henny's Petition is not filed under 28 U.S.C. § 2254, the Court may apply the rules governing that section per Rule 1(b).

## BACKGROUND

A court in the Northern District of Iowa sentenced Ms. Henny in June 2021 to a 70-month term of imprisonment for her conviction of wire fraud in violation of 18 U.S.C. § 1343, to be followed by a three-year term of supervised release. (Docs. 5 ¶ 3; 15-1 at 2.) The BOP housed Ms. Henny at the Federal Correctional Facility in Waseca, Minnesota ("FCI Waseca") at the time she filed her petition on February 23, 2023. (*See* Doc. 1 at 1.) Since then, she has been transferred to a satellite camp at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"), and then to a local jail on administrative status as a transfer holdover because—while the BOP intended for her to be housed in a special housing unit because of a pending investigation—FMC Lexington does not have a special housing unit for female prisoners. (Docs. 15 ¶ 4; 15-1 at 1.) That local jail facility is overseen by the Cincinnati Residential Reentry Management Office, which created the appearance that Ms. Henny had been transferred to prerelease custody at a residential reentry center ("RRC"). (Doc. 15 ¶ 4.) Out of caution, the Court thus ordered supplemental briefing on the petition to ensure that the record accurately reflected Ms. Henny's custodial status. (Doc. 13.) According to Respondent's supplemental briefing, Ms. Henny is still serving her custodial sentence and is set for transfer to a community confinement placement on November 21, 2024. (Docs. 14 at 1; 15 ¶ 6.) She has a projected release date of August 12, 2025. *See* BOP, *Find an Inmate*, https://perma.cc/G8VJ-Y4W7 (last visited Oct. 24, 2024).

**The First Step Act, PATTERN Scores, and FSA Time Credits.**

Ms. Henny's petition relates to incentives she has earned under the First Step Act of 2018. Congress enacted the First Step Act, or FSA, to reduce the federal prison population while also creating mechanisms for maintaining public safety by reducing recidivism risk. Congressional Research Service, *The First Step Act of 2018: An Overview*, 1 (2019), https://perma.cc/9JDZ-H6JH. Through the FSA, Congress directed the United States Attorney General to develop a risk and needs assessment system to determine the recidivism risk of each incarcerated person, their specific programing needs based on that assessed risk, and their classification according to their minimum, low, medium, or high risk for recidivism. 18 U.S.C. § 3632(a). The BOP uses the assessment system, called the PATTERN tool, to determine the type of evidence-based recidivism reduction ("EBRR") programming and productive activities ("PA") most appropriate for each incarcerated person. *Id.* § 3632(a)(3), (5), (b).

Congress included incentives in the risk and needs system to encourage participation in a person's assigned EBRR programming and PAs. *See id.* § 3632(a), (d). Among these incentives are FSA "time credits," or "FTCs". Under the FSA, eligible people who successfully complete their assigned EBRRs and PAs "shall earn 10 days of [FTCs] for every 30 days of successful participation in [EBRR] programming or [PAs]." *Id.* § 3632(d)(4)(A)(i). Additionally, a person whom the BOP determines to be at a minimum or low risk of recidivism, who does not increase their risk of recidivism over the course of two consecutive assessments, "shall earn an additional 5 days of [FTCs] for every 30 days of successful participation in [EBRR] programing or [PAs]." *Id.* § 3632(d)(4)(A)(ii).

3

FTCs "shall be applied toward time in pre-release custody or supervised release." *Id.* §§ 3632(d)(4)(c), 3624(g). Pre-release custody includes either placement at an RRC or on home confinement for the number of FTCs earned, *see* 18 U.S.C. 3624(g)(2). Under the FSA, if a person's sentence includes a period of supervised release, the BOP may transfer that person to begin their supervised release term up to 12 months before their sentence otherwise ends. *Id.* § 3624(g)(3).

The BOP may apply earned FTCs toward pre-release custody or early transfer to supervised release under 18 U.S.C. § 3624(g) only if an eligible person has: (1) earned FTCs in an amount that is equal to the remainder of their imposed term of imprisonment; (2) shown a demonstrated recidivism risk reduction through periodic risk assessments or maintained a low or minimum recidivism risk; and (3) had the remainder of their term of imprisonment computed under applicable law. *Id.* § 3624(g)(A)–(C).

**Ms. Henny's Petition Challenging the Calculation of Her FTCs.**

Ms. Henny articulates four challenges to the BOP's calculation and application of her FTCs. First, she claims that the BOP is failing to apply the credits she has earned under 18 U.S.C. § 3632. (Doc. 1 at 6–7.)[2] Second, she argues that because the BOP has not

---

[2] Ms. Henny's petition discusses a detainer that FCI Waseca's warden noted on June 6, 2022, was "currently lodged against [her] by Black Hawk County Sheriff's Office in Waterloo, Iowa. (Doc. 1-1 at 1.) This alleged detainer appears to have been the subject of a number of Ms. Henny's appeals (*id.* at 2, 3) and subsequent administrative BOP grievances (*id.* at 6; *see also* Docs. 1-1 at 1, 3–5). Respondent provided no indication that Ms. Henny's alleged detainer had any impact on her ability to earn FTCs. (Doc. 5 ¶ 4 ("Henny is eligible to earn FTCs under 18 U.S.C. § 3632(d).") Ms. Henny's BOP records supplied by Respondent indicate the BOP recognizes her FTCs will apply to her projected early release. (Doc. 5-1 at 2.) The Court finds no reason to address the detainer, as it does not appear to bear on her challenges in this petition.

properly applied her earned FTCs, her release date is incorrect. (*Id.* at 7.) Third, she argues that she has earned more FTCs than the BOP records reflect, including during a period between "Oct. 21 to Mar. 2022" when she worked at UNICOR and participated in programming. (*Id.*; *see also* Doc. 7 at 3 (Ms. Henny claims she earned 90 days of credit between "10/06/21 to 03/30/33" while participating in UNICOR).) And fourth, Ms. Henny contends that if the BOP could not provide programming to her during the pandemic so that she could maximize her FTC earnings, then she should have been permitted relief under the CARES Act and been allowed to serve her sentence in home confinement. (Doc. 1 at 7.) As relief, she asks the Court to "ensure the Federal Bureau of Prisons applies [her] Earned Time Credits in total" and that the totals are "updated each month to reduce [her] sentence length immediately in accordance with 18 U.S.C. [§§] 3632 and 3624(g)." (*Id.* at 8.)

Respondent argues that Ms. Henny's petition is factually and legally inaccurate as well as premature. First, Respondent asserts that there is no dispute about the number of FTCs Ms. Henny has earned and, in the BOP's estimation, it has properly calculated her earned FTCs. Additionally, Respondent contends that application of Ms. Henny's earned FTCs to her sentence calculation is premature because she has not yet earned FTCs equal to the number of days remaining on her sentence. Respondent therefore claims that her petition should be dismissed.[3]

---

[3] Respondent originally argued that Ms. Henny's petition should be dismissed because the BOP's decision on her CARES Act eligibility is unreviewable. But Ms. Henny makes clear in her reply to Respondent's filing that she is "not requesting the Court to provide relief with the provision of the CARES Act," but wanted to make the point that if the BOP had

5

Ms. Henny filed a reply restating that the BOP has not complied with the FSA and should immediately apply her FTCs to reduce her sentence. Specifically, she asks the Court to require the BOP "to correctly calculate and apply the earned time credits that [she] ha[s] earned in accordance with 18 U.S.C. [§] 3632 and release [her] post haste, as [she] should have been released if [her] earned time credits had been applied correctly and in accordance with law." (Doc. 7 ¶ 4.) Her earnings, according to Ms. Henny, amount to "2,910 programming days" which she calculates are credits "redeemable for 1,455 days or 48.5 months or 4 years and 15 days." (*Id.* at 3.)[4] Ms. Henny reiterates that the application of her FTCs should occur every month. Finally, Ms. Henny also argues that she has fully exhausted her administrative remedies.[5]

After the Court's October 1, 2024 Order for supplemental briefing, Respondent filed a letter (Doc. 14) explaining Ms. Henny's housing in a local jail has not changed her custodial status. According to the BOP, as of October 9, 2024, Ms. Henny had earned 946 program days, which the BOP calculated results in 435 earned FTCs. (*Id.* at 1.) After projecting the maximum 365 FTCs earned will be allotted towards Ms. Henny's early release, the BOP projects the remaining 70 earned FTCs will go towards her prerelease

---

provided her "FSA earned time credits since January of 2022," then she would have been eligible for home confinement under the CARES Act. (Doc. 7 at 1.) Because Ms. Henny does not seek relief under the CARES Act, the Court will not address that issue here. The BOP acknowledged that Ms. Henny is no longer seeking relief under the CARES Act in their supplemental brief. (Doc. 14 at 2.) Therefore, the Court finds that Ground Four of Ms. Henny's petition has been withdrawn.

[4] Ms. Henny filed an addendum explaining that in her view FTCs are "stackable" and that it is possible to earn "more time credits than just 10 or 15 for every 30 days of successful participation." (Doc. 11 at 1-2.)

[5] Respondent does not appear to dispute this claim in any of his briefing.

6

custody in an RRC or home confinement. (*Id.*) Respondent notes that Ms. Henny is scheduled to begin prerelease community confinement placement on November 21, 2024, and has a projected release date of August 12, 2025, inclusive of the future application of her FTC earnings. Respondent also reiterates his position that the BOP has correctly calculated her FTC earnings, and that it is too soon to apply them under the FSA.

Ms. Henny has not filed a response to the Court's request for supplemental briefing at this time, and the deadline has now passed. Because the Court is concerned that her petition be addressed before her custodial status changes such that some or all of her petition becomes moot, it will proceed to consider her petition without the benefit of such supplemental briefing. The Court also notes that Ms. Henny will still be able to object to this Court's findings and recommendations under this District's Local Rules. *See* D. Minn. LR 72.2(b)(1).

## ANALYSIS

The writ of habeas corpus is a procedure available to prisoners to create government accountability for unlawful detention. *See Peyton v. Rowe*, 391 U.S. 54, 58 (1968); *Ex parte McCardle*, 73 U.S. (6 Wall.) 318, 325–26 (1867). Through habeas, prisoners may petition a court to require their "jailer to justify the[ir] detention under the law." *Jorgensen v. Birkholz*, No. 20-cv-2349 (NEB/DTS), 2021 WL 3476709, at *5 (D. Minn. Feb. 18, 2021) (quoting *Peyton*, 391 U.S. at 58), *R. & R. adopted*, 2021 WL 2935641 (D. Minn. July 13, 2021), *appeal dismissed*, No. 21-2786, 2021 WL 6808428, at *1 (8th Cir. Sept. 27, 2021). Under 28 U.S.C. § 2241—a habeas statute for prisoners in federal custody—federal courts have the jurisdiction to determine whether a prisoner's custody violates federal law. 28

U.S.C. § 2241(c)(3). Additionally, courts construe pro se petitions liberally. *See Frey v. Schuetzle*, 78 F.3d 359, 361 (8th Cir. 1996).

I.  **MS. HENNY'S FTC CALCULATION INCORRECTLY ASSUMES THAT SHE CAN EARN MORE THAN 10 OR 15 FTCS FOR EACH 30-DAY PARTICIPATION PERIOD.**

The Court first addresses Ms. Henny's claim that she is entitled to "1,455 days" of FSA time credits based on the number of EBRR programs she has completed rather than how long she has spent in programming. (Doc. 1-1 at 8.) The Court understands Ms. Henny to be arguing that she is entitled to 1,455 days of earned FTCs based on an "accumulated 2,910 programing days" which she calculates are credits "redeemable for 1,455 days or 48.5 months or 4 years and 15 days." (Docs. 9-1 at 3; 9-2.)

Ms. Henny's argument seems rooted in the incorrect assumption that she could earn more than 10 or 15 FTCs per 30 days of program participation. In her Exhibit A (Doc. 1-1) attached to her petition, she provides a breakdown of each individual program or activity she engaged in—such as courses on aging, health, and relationships—and she calculates the number of days she spent in each of those activities or classes individually. Ms. Henny took many of these classes during overlapping 30-day periods. She seeks to claim FTC earnings for the same 30-day periods at a rate beyond 10 or 15 FTCs per 30-day period because she believes she may earn per program or activity, not per 30-day period of participation in one or more programs or activities.

Under the FSA,

> [a] prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction

>> programming or productive activities, shall earn time credits as follows:
>
>> (i)   A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
>> (ii)  A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A).

Courts assume that Congress "says in the statute what it means and means in the statute what it says." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). The FSA's language concerning the binary nature of accruals for participation in programs and activities is not ambiguous—the FTC switch is either flipped on because a person is participating (regardless of the number of programs or activities), or the switch is flipped off because a person is not participating in any programs or activities. "Congress made clear that a [person] earns First Step Act Time Credits based on the number of days in which they participate in eligible programs, not the number of eligible programs in which they participate." *Dale v. Hawkins*, No. H-22-3224, 2023 WL 2601215, at *5 (S.D. Tex. Mar. 22, 2023); *accord Robinson v. Segal*, No. 23-cv-888 (WMW/DTS), 2023 WL 4214895, at *2 (D. Minn. May 3, 2023) ("The BOP has interpreted § 3632(d)(4)(A) consistent [with] the reading put forward above—prisoners are awarded credits based on days spent in programming, not based on number of programs attended.") (quoting 28 C.F.R. § 523.42(c)(1)), *R. & R. adopted*, 2023 WL 4203169 (D. Minn. June 27, 2023).

Thus, Ms. Henny's argument that her FTC earnings are "stackable" is legally incorrect because it goes against the plain language of the FSA.

Even setting aside Ms. Henny's claims about "stackability," there are problems with her FTC calculations. In her Exhibit A, she appears to mistake days of participation for days of earned FTCs in some cases. For example, she claims she participated in a program called "Women's Relationships" from March 31, 2022 through December 14, 2022—a period of 258 total days, or about eight and one-half months. (Doc. 1-1 at 1.) Ms. Henny directly translates those days into earned time credits at a 1-to-1 ratio, claiming that those 285 days are part of the sum total 1,455 days of FTCs she has earned. But participation in a 285-day program does not amount to 285 FTCs. Instead, those days would be divided into at a rate of 10 or 15 days credit for every 30 days of programming. Even assuming she earned FTCs at a rate of 15 days for every 30 of programming—which appears accurate according to BOP records (*see* Docs. 5-3 at 1; 15-2 at 1), she would be entitled to only half the 285 FTCs that she claims. (Doc. 1-1 at 1.) The sum of her program and activity participation as calculated on Exhibit A is therefore inaccurate, by the Court's calculations.

Ms. Henny's calculations also assume that she earned FTCs at a rate of 15 per month for each of her programs and activities, some of which she participated in as early as August 17, 2021. Yet BOP records show that between July 29, 2021—when her incarceration began—and February 22, 2022—when she met the criteria to earn at a rate of 15 FTCs for every 30-day participation period—she only earned FTCs at a factor of 10 FTCs for every 30-day participation period. (*See* Docs. 5-3 at 1; 15-2 at 1.) Ms. Henny has not directly challenged or offered specific arguments about whether the BOP incorrectly assessed her

FTC earning *rate* at 10 or 15 FTCs per 30-day participation period beyond her claim that the BOP is undercalculating her "stackable" credits and should apply them on a monthly basis. The closest she comes to attacking the applicable rates is perhaps her argument in Ground Three that she has earned more FTCs than the BOP records reflect, including during a period between "Oct. 21 to Mar. 2022" when she worked at UNICOR and participated in programming. (Doc. 1 at 7; *see also* Doc. 7 at 3 (Ms. Henny claims she earned 90 days of credit between "10/06/21 to 03/30/33" while participating in UNICOR).) As to this argument, the Court notes that BOP records reflect Ms. Henny accrued FTCs at a factor of 10 to 30 between July 29, 2021, and February 22, 2022. (*See* Docs 5-3 at 1; 15-2 at 1.) On this Court's review, Ms. Henny is claiming program participation days totaling 175 days. Applying the BOP's rate assignments, 139 of those days Ms. Henny earned FTCs at a factor of 10, and the remaining 36 days she earned FTCs at a factor of 15. This would work out to 64 or so earned FTCs, where 139 days are multiplied by a factor of 10 to reach 46 FTCs, and 36 days are multiplied by a factor of 15 to reach 18 FTCs. Thus, Ms. Henny's claim that the BOP owed her 90 days of FTCs for this period appears mathematically incorrect.

    The Court has also reviewed the BOP's records of Ms. Henny's participation in programming and activities. In the BOP's records, Ms. Henny has accrued 946 program days, which it calculates amount to 435 FTCs. If 365 of those can be applied to Ms. Henny's early release under the FSA, then that leaves 70 remaining that can be considered for Ms. Henny's prerelease custody in an RRC or on home confinement. This calculation appears

accurate.[6] Without any apparent error in the BOP's calculations, and finding various errors in Ms. Henny's calculations based primarily on an incorrect assumption that program and activity FTC earnings are "stackable," Ms. Henny's claims for habeas relief fail. The Court thus recommends Grounds One, Two, and Three of her petition be denied to the extent they seek an order for the BOP to correct its calculation of Ms. Henny's FTCs.

## II.  MS. HENNY'S CLAIM THAT THE BOP IS REQUIRED TO IMMEDIATELY AND MONTHLY APPLY HER EARNED FTCS TOWARDS PRE-RELEASE CUSTODY OR SUPERVISED RELEASE IS PREMATURE.

Ms. Henny claims that she is entitled to have the BOP immediately and monthly apply her FTCs to her sentence computation. (Doc. 1 at 7.) However, the Court concludes upon review that her claim is premature. The BOP has determined that Ms. Henny is eligible to *earn* FTCs under 18 U.S.C. § 3632(d) because she does not meet any disqualifying criteria under the FSA. (Doc. 1-1 at 12.); *see also* 18 U.S.C. § 3632(d)(4)(D). But the Court finds that despite her eligibility to earn credits, she is currently ineligible for the *application* of her earned FTCs toward pre-release custody.

The FSA provides that a person is eligible to have time credits applied toward supervised release or pre-release custody only when they have earned time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). At the time of this writing, as discussed above, Ms. Henny is projected to be eligible for early release under the FSA on August 12, 2025. (Doc. 15-4 at

---

[6] Even if this calculation were incorrect, a claim asserting that a prisoner ought to be moved to an RRC or home confinement is about the place of confinement, not the fact or duration of confinement. Such claims are typically not reviewable on habeas petitions. *Spencer v. Haynes*, 774 F.3d 467, 470-71 (8th Cir. 2014).

2.) Her release date without the application of her FSA FTCs is August 12, 2026. (*Id.*) Therefore, because Ms. Henny's 365 FTCs set for allocation to her early release under the FSA do not yet equal the amount remaining on her sentence set to end on August 12, 2026, she is not yet entitled under the FSA to the application of her credits. Therefore, a habeas petition requesting the application of FSA time credits is premature. *Moore v. Rardin*, No. 22-cv-2476 (NEB/TNL), 2022 WL 18542331, at *6 (D. Minn. Dec. 1, 2022) ("Because Petitioner's earned time credits (690 days) do not yet equal the remainder of her sentence (approximately 898 days), the Court agrees with Respondent that it would be premature 'to direct the BOP to adjudicate the credits at this time.'"), *R. & R. adopted*, 2023 WL 1451560 (D. Minn. Feb. 1, 2023). The Court thus recommends Ms. Henny's petition be also denied to the extent she seeks immediate or monthly application of Ms. Henny's FTCs. The Court thus recommends the entirety of Ms. Henny's petition be denied as to all grounds.

### III. AN EVIDENTIARY HEARING IS NOT NECESSARY.

Finally, an evidentiary hearing is appropriate only when material facts are in dispute. *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995). An evidentiary hearing is not required when a conclusion can be reached on the issue with the undisputed facts. *United States v. Winters*, 411 F.3d 967, 973 (8th Cir. 2005). This matter can be resolved based on the record and thus the Court finds no evidentiary hearing is necessary.

### RECOMMENDATION

Accordingly, based on all of the above, **IT IS RECOMMENDED** that:

1. Petitioner Kimberly Henny's Petition for Writ of Habeas Corpus under 28 U.S.C. §2241 (Doc. 1) be **DENIED**; and

2. This matter be **DISMISSED WITHOUT PREJUDICE**.

Date: October 28, 2024  *s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).